**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Julio Roman

    v.

Nancy A. Berryhill, Acting
Commissioner, Social
Security Administration

Civil No. 18-cv-787-PB
Opinion No. 2019 DNH 111

## O R D E R

Julio Roman moves to reverse the decision of the Acting
Commissioner of the Social Security Administration ("SSA") to
deny his applications for Social Security disability insurance
benefits, or DIB, under Title II of the Social Security Act, 42
U.S.C. § 423, and for supplemental security income, or SSI,
under Title XVI, 42 U.S.C. § 1382.  The Acting Commissioner, in
turn, moves for an order affirming her decision.  For the
reasons that follow, I remand this matter to the Acting
Commissioner for further proceedings.

### I. Scope of Review

The scope of judicial review of the Acting Commissioner's
decision is as follows:

> The [district] court shall have power to enter, upon
> the pleadings and transcript of the record, a judgment
> affirming, modifying, or reversing the decision of the
> Commissioner of Social Security, with or without
> remanding the cause for a rehearing.  The findings of
> the Commissioner of Social Security as to any fact, if
> supported by substantial evidence, shall be conclusive
> . . . .

42 U.S.C. § 405(g) (setting out standard of review for decisions on claims for DIB); see also 42 U.S.C. § 1383(c)(3) (applying § 405(g) to SSI decisions).  However, the court "must uphold a denial of social security disability benefits unless 'the [Acting Commissioner] has committed a legal or factual error in evaluating a particular claim.'"  Manso-Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).  As for the standard of review that applies when an applicant claims that an SSA adjudicator made a factual error,

> [s]ubstantial-evidence review is more deferential than
> it might sound to the lay ear: though certainly "more
> than a scintilla" of evidence is required to meet the
> benchmark, a preponderance of evidence is not.  Bath
> Iron Works Corp. v. U.S. Dep't of Labor, 336 F.3d 51,
> 56 (1st Cir. 2003) (internal quotation marks omitted).
> Rather, "[a court] must uphold the [Acting
> Commissioner's] findings . . . if a reasonable mind,
> reviewing the evidence in the record as a whole, could
> accept it as adequate to support [her] conclusion."
> Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d
> 218, 222 (1st Cir. 1981) (per curiam).

Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018).

## II. Background

### A.  Biography

Roman was born in 1977.  As a child, he was sexually abused.  As an adult, he has been injured by stabbings on several occasions.  Roman last worked in 2011 as a grinder/finisher in a manufacturing business.  Before that, he

had worked as a line leader in manufacturing, as a lead/asbestos worker, as a janitor/backroom worker, as a demolition worker, and at odd jobs.  For about two years, between 2013 and 2015, Roman was homeless.  He attempted suicide in 2012 and 2014.  His 2012 suicide attempt resulted in hospitalization.  In August of 2016, Roman was incarcerated – not for the first time – and he remained in custody until two days before the May 2, 2018, hearing that resulted in the adverse decision he now appeals.

B.  Medical History

Roman has been diagnosed with several physical impairments including obstructive sleep apnea, peripheral neuropathy,[1] and back pain with radiculopathy.[2]  With respect to Roman's back condition, a May 2009 x-ray revealed "mild scoliosis of the thoracic spine."  Administrative Transcript (hereinafter "Tr.") 1051.[3]  August 2013 x-ray studies showed, among other things, "very slight scoliosis of the thoracic spine [and] no

---

[1] Neuropathy is "a disease involving the cranial nerves or the peripheral or autonomic nervous system."  Stedman's Medical Dictionary 1313 (28th ed. 2006).

[2] Radiculopathy is a "[d]isorder of the spinal nerve roots." Stedman's, supra note 1, at 1622.

[3] Scoliosis is an "[a]bnormal lateral and rotational curvature of the vertebral column."  Stedman's, supra note 1, at 1734.

significant degenerative changes." Tr. 1275. An August 2014

MRI yielded the following results:

> L4-5: Minimal diffuse disc enlargement with central prominence. No stenosis.

> L5-S1: There is mild to moderate diffuse disc enlargement with encroachment on the inferior recess of the nerve root canal bilaterally. There is no central stenosis. There is bilateral mild facet hypertrophy. There is minimal left nerve root canal narrowing. Right nerve root canal is patent.

> The other lumbar discs are within normal limits.

> IMPRESSION: Some involutional changes are noted in the disc and facet joints at L4-5 and L5-S1, as described.

Tr. 1392.[4] Treatment for Roman's back condition has consisted of

physical therapy and medication, including three opioids:

Percocet, Kadian, and Vicodin.[5]

Roman has also been diagnosed with major depressive

disorder; bipolar 1 disorder; attention deficit hyperactivity

---

[4] Stenosis is "[a] stricture of any canal or orifice." Stedman's, supra note 1, at 1832. Hypertrophy is a "[g]eneral increase in bulk of a part or organ, not due to tumor formation." Id. at 929.

[5] Percocet is a "trademark for a combination preparation of oxycodone hydrochloride and acetaminophen." Dorland's Illustrated Medical Dictionary 1409 (32nd ed. 2012). Oxycodone is "an opioid agonist analgesic derived from morphine." Id. at 1356. Kadian is a "trademark for preparations of morphine sulfate." Id. at 676. Vicodin is a "trademark for combination preparations of hydrocodone bitartrate and guaifenesin." Id. at 2055. Hydrocodone is a "semisynthetic opioid analgesic derived from codeine but having more powerful sedative and analgesic effects." Id. at 878.

disorder; mixed personality disorder with aspects of antisocial
personality and borderline personality; posttraumatic stress
disorder ("PTSD"); impulse-control disorder; alcohol dependence;
cannabis dependence; opioid-use disorder; cocaine-use disorder;
polysubstance dependence; and psychoactive-substance-abuse
disorder with anxiety disorder.  For those conditions, he has
been treated with counseling and medication.[6]  In the fall of
2015, Roman began working with a case manager at the Greater
Nashua Mental Health Center who provided counseling and also
assisted Roman in: (1) going to a soup kitchen; (2) going to a
food pantry;[7] (3) going to the city welfare office to apply for
benefits; (4) attending a hearing in this matter; (5) attending
a court hearing concerning child support payments; (6) attending
a court hearing regarding an eviction; and (7) filling out a
variety of legal paperwork.

C.  Application for Benefits

Roman applied for Social Security benefits in April of
2012.  He claimed that he was unable to work due to chronic

---

[6] Specifically, he has been prescribed Depakote, Trazadone,
Sertraline, Lorazepam, duloxetine, Topiramate, Seroquel, and
Prozac for his mental impairments.

[7] During the food pantry visit, Roman became "very anxious
due to the amount of people there," Tr. 1459, and Hamilton
"pulled [him] aside to practice some coping skills like deep
breathing," id.

lower and upper back injuries and mental health issues.  The

Disability Determination Explanation form resulting from that

application indicates that while the SSA scheduled an orthopedic

consultative examination for Roman,[8] he missed two appointments,

and the SSA denied his application on grounds that the evidence

it had on file was insufficient to support an award of benefits

based on either a physical impairment or a mental impairment.

        D.    2013 Hearing

        After the SSA denied Roman's application, he received a

hearing before an Administrative Law Judge ("ALJ") in September

of 2013.  In January of 2014, the ALJ issued an unfavorable

decision in which he determined that: (1) Roman had two severe

mental impairments, PTSD and antisocial personality disorder,

but had no severe physical impairments; (2) none of Roman's

impairments, either alone or in combination, were severe enough

to qualify as a disabling anxiety related disorder or as a

disabling personality disorder under the applicable SSA

regulations; (3) Roman did not have the residual functional

capacity ("RFC") to perform his past work;[9] but (4) he was not

disabled because he had the RFC to perform three other jobs.

---

        [8] "A consultative examination is a physical or mental
examination or test purchased for [a claimant] at [the SSA's]
request."  20 C.F.R. §§ 404.1519 & 416.919.

        [9] "[R]residual functional capacity 'is the most [a claimant]
can still do despite [his or her] limitations.'"  Purdy, 887

E.  Appeals Council Remand

Roman appealed the ALJ's decision, and the SSA Appeals Council ("AC") remanded.  In its remand order, the AC pointed out that the ALJ's decision did "not assess the severity of [Roman']s alcohol abuse," Tr. 243, and further explained that the ALJ's factual findings "suggest[ed] that alcohol abuse was a severe impairment that should have been assessed in [his] decision," id.  The AC continued:

> Under the regulations, the [ALJ] must first determine whether, considering all of the claimant's impairments and including the substance abuse disorder, the claimant has been under a disability.  Only after an individual is found to have been under a disability considering the substance use may the [ALJ] determine whether the substance abuse disorder is a contributing factor material to the determination of disability with rational provided (20 CFR 416.935 and Social Security Ruling 13-2p).  Here, the decision makes finings with regard to the effects of the claimant's impairments in the absence of the alcohol abuse without first determining whether the claimant would be disabled when the claimant is abusing alcohol.

Tr. 243-44.  Finally, the AC provided several specific instructions for the ALJ on remand, including these: (1) "[f]urther evaluate the claimant's mental impairments in accordance with the special technique described in 20 CFR 416.920a, documenting application of the technique in the

---

F.3d at 10 n.2 (quoting 20 C.F.R. § 416.945(a)(1), a regulation governing claims for SSI that is worded identically to 20 C.F.R. § 404.1545(a)(1), which governs claims for DIB) (brackets in the original).

decision by providing specific finding and appropriate rationale for each of the functional areas described in 20 CFR 416.920a(c)" id.; (2) "[g]ive further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitation," id.; and (3) "[i]f the claimant is found disabled, conduct the further proceedings required to determine whether alcoholism is a contributing factor material to the determination of disability," id.

F.   2016 Hearing, Part One

On remand, the ALJ convened a hearing on June 1, 2016.  At that hearing, a psychiatric expert, Dr. Nathan Strahl, acknowledged diagnoses of an affective disorder, an anxiety related disorder, a personality disorder, and a substance addiction disorder.

The SSA regulations in force at the time of Roman's 2016 hearing identified affective disorders (Listing 12.04), anxiety related disorders (Listing 12.06), and personality disorders (Listing 12.08) as mental impairments that were per se disabling, if certain requirements or criteria were satisfied. To meet Listing 12.04, an affective disorder needed to satisfy the criteria in paragraphs A and B of the listing, or satisfy the criteria in paragraph C.  To meet Listing 12.06, an anxiety

related disorder needed to satisfy the criteria in paragraphs A
and B, or the criteria in paragraphs A and C.  To meet Listing
12.08, a personality disorder needed to satisfy the criteria in
both paragraphs A and B.  Each of those three listings had the
same paragraph B criteria, which required an impairment to
result in at least two of the following:

> 1. Marked restriction of activities of daily living;
> or

> 2. Marked difficulties in maintaining social
> functioning; or

> 3. Marked difficulties in maintain concentration,
> persistence, or pace; or

> 4. Repeated episodes of decompensation, each of
> extended duration.

20 C.F.R. Pt. 404, Subpt. P., App. 1, Listings 12.04, 12.06,
12.08 (2016 ed.).[10]

According to Dr. Strahl's 2016 hearing testimony, when
Roman was using alcohol and marijuana, he had: (1) moderate
restrictions of his activities of daily living; (2) marked
difficulties in maintaining social functioning; (3) moderate to
marked difficulties in maintaining concentration, persistence or
pace; and (4) a "mild" number of episodes of decompensation,

---

[10] Under the regulations in force in 2016, "[w]hen [the SSA]
rate[ed] the degree of limitation in the first three functional
areas [in paragraph B], [it] use[ed] the following five-point
scale: None, mild, moderate, marked, and extreme."  20 C.F.R. §§
404.1520a(c)(4) & 416.920a(c)(4) (2016 ed.).

each of extended duration.  In other words, Dr. Strahl opined that when Roman was using alcohol and marijuana, three of his mental impairments satisfied the paragraph B criteria.

Then he opined that if Roman were "compliant with [mental health] treatment, not using substances, [and] tak[ing] [his] medications as prescribed on a regular basis," Tr. 139, he would have: (1) mild restrictions of his activities of daily living; (2) marked difficulties in maintaining social functioning; (3) mild difficulties in maintaining concentration, persistence or pace; and (4) no episodes of decompensation, each of extended duration.  In other words, Dr. Strahl opined that without substance use, none of Roman's mental impairments would satisfy the paragraph B criteria.

After Dr. Strahl gave the foregoing testimony, the ALJ adjourned the hearing because Dr. Strahl did not have time to hear testimony from Roman and an additional witness who was scheduled to appear.

G.  2016 Hearing, Part 2

After several false starts, Roman's 2016 hearing was reconvened on May 2, 2018.  A hearing scheduled for January 23, 2017, had been postponed so that the parties could obtain additional medical records, including records from correctional facilities in which Roman had been incarcerated.  At the aborted January 23 hearing, Roman's counsel pointed out, correctly, that

since the 2016 hearing, the SSA had amended the regulations
setting out the requirements that mental impairments must
satisfy in order to be disabling.  Hearings scheduled for
September 11 and December 11, 2017, were also postponed due to
the unavailability of Roman's prison medical records.

When the 2016 hearing finally resumed in May of 2018,
Roman's counsel conceded that she had no opinion evidence on
Roman's physical RFC but argued that a common-sense view of the
available evidence compelled a conclusion that Roman retained
the RFC to perform no more than light work.  In the alternative,
she suggested that a consultative physical examination might be
in order.

Dr. Strahl also testified at the 2018 hearing.  Among other
things, he said that nothing in Roman's prison medical records
changed the opinion he gave at the 2016 hearing, i.e., that
without substance use, none of Roman's mental impairments
satisfied the paragraph B criteria.  See Tr. 56, 58.  However,
notwithstanding the ALJ's statement to the contrary, see Tr. 25,
Dr. Strahl does not appear to have offered testimony
specifically directed to the new paragraph B criteria that had
replaced the ones in force when he testified in 2016.  Be that
as it may, Dr. Strahl also testified that while he "considered"
the paragraph C criteria, he did "not have an opinion on the C
criteria," Tr. 82.

<u>H.   The ALJ's Decision</u>

After Roman's hearing, the ALJ issued a decision in which

he determined that Roman had three "severe [mental] impairments:

PTSD/anxiety, a personality disorder (anti-social and

borderline); and a substance abuse disorder," Tr. 21, but had no

severe physical impairments.   Furthermore, the ALJ denied

Roman's request for a consultative physical examination,

explaining:

> [T]he facts of this case do not warrant or suggest the
> need for a consultative examination, which is within
> the sole discretion of the undersigned.   There is no
> need to further develop this record as the evidence
> already in evidence is adequate for the undersigned to
> make a determination as to disability.

Tr. 33.

<u>1.   Mental Impairments With Substance Use</u>

The ALJ determined that when Roman is using substances, his

mental impairments meet or equal the severity of Listings 12.04

(depressive, bipolar, and related disorders), 12.06 (anxiety and

obsessive-compulsive disorders), 12.08 (personality and impulse-

control disorders), and 12.15 (trauma- and stressor-related

disorders).[11]   To meet Listing 12.04, Listing 12.06, or Listing

12.15, a mental impairment must satisfy the criteria in

---

[11] When the ALJ issued his first decision in this case in
2014, the SSA regulations included a listing for substance
addiction disorders, Listing 12.09, but that listing had been
dropped by the time the ALJ issued his second decision in 2018.

paragraphs A and B of the listing, or satisfy the criteria in paragraphs A and C.[12]  To meet Listing 12.08, a personality or impulse-control disorder must satisfy the criteria in both paragraphs A and B.[13]

Without differentiating between the four listings at issue, the ALJ found that

> [t]he paragraph A criteria [were] satisfied because the claimant [had] with substance use, the following documented signs and symptoms: flat affect; feelings of hopelessness; low motivation; irritability; depressed mood; anxiety; sleep problems; nightmares; racing thoughts; hypersomnia; impaired concentration; lack of interest; suicidal ideation; interpersonal conflict; and feelings of hopelessness.

Tr. 24.

Then the ALJ turned to the new paragraph B criteria, which are the same for all four listings at issue and which call for:

> Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):
>
> 1. Understand, remember, or apply information (see 12.00E1).
>
> 2. Interact with others (see 12.00.E2).
>
> 3. Concentrate, persist, or maintain pace (see 12.00E3).
>
> 4. Adapt or manage oneself (see 12.00EF4).

---

[12] Each listing has its own set of paragraph A criteria, but all three share the same paragraph B and paragraph C criteria.

[13] Listing 12.08 has no paragraph C criteria.

20 C.F.R. Pt. 404, Subpt. P., App. 1, Listings 12.04, 12.06, 12.08, 12.15 (2018 ed.).[14]  Applying the new criteria, the ALJ found that, when using substances, Roman had: (1) moderate limitations "[i]n understanding, remembering, or applying information," Tr. 24; (2) marked limitations in interacting with others; (3) marked limitations "[w]ith regard to concentrating, persisting, or maintaining pace," Tr. 25; and (4) mild limitations in adapting or managing himself.

The ALJ made no findings with respect to the paragraph C criteria.

Based upon his findings on the paragraph A and paragraph B criteria, the ALJ determined that when Roman is using substances, his mental impairments meet Listings 12.04, 12.06, 12.08, and 12.15.

### 2.  Mental Impairments Without Substance Use

The ALJ went on find that if Roman stopped his substance use, his mental impairments would no longer meet Listings 12.04, 12.06, 12.08, or 12.15.  In making that finding, the ALJ did not mention either the paragraph A criteria or the paragraph C criteria but rather, he relied exclusively on his paragraph B findings that, without substance use, Roman would have: (1)

---

[14] The new paragraph B criteria use the same five-point scale as the old paragraph B criteria.  <u>See</u> 20 C.F.R. §§ 404.1520a(c)(4) & 416.920a(c)(4) (2018 ed.).

"mild limitation in understanding, remembering, or applying information," Tr. 26; (2) mild limitation in interacting with others;[15] (3) moderate limitation "[w]ith regard to concentrating, persisting, or maintaining pace," id.; and (4) mild limitation in adapting or managing himself.

### 3. Roman's RFC

After determining that in the absence of substance use, Roman would not have any listing-level mental impairment, the ALJ determined that absent substance use, Roman "would have the residual functional capacity to perform a full range of work at all exertional levels." Tr. 27.

### 4. Jobs Roman Could Perform

Based upon the RFC he assigned Roman, and the testimony of a vocational expert, the ALJ determined that if Roman "stopped [his] substance use, [he would be] capable of performing past relevant work as a janitor, asbestos worker, construction worker II, and grinder polisher."[16]  Tr. 33.  Alternatively, the ALJ found that Roman retained the RFC to perform the jobs of price marker, housekeeper, and rack loader.  On that basis, the ALJ

---

[15] The ALJ gave several reasons for that finding, but did not explain his deviation from Dr. Strahl's opinion that even without substance use, Roman would have marked difficulties in maintaining social functioning.

[16] At Roman's hearing, the VE appears to have testified that Roman did not perform the grinder polisher job long enough for it to qualify as past relevant work.  See Tr. 90.

determined that Roman had not been under a disability at any time from August 1, 2012, through June 20, 2018, the date of his decision.

## III. Discussion

### A.   The Legal Framework

To be eligible for disability insurance benefits, a person must: (1) be insured for that benefit; (2) not have reached retirement age; (3) have filed an application; and (4) be under a disability.  42 U.S.C. § 423(a)(1)(A)-(D).  To be eligible for supplemental security income, a person must be aged, blind, or disabled, and must meet certain requirements pertaining to income and assets.  42 U.S.C. § 1382(a).  The only question in this case is whether the ALJ correctly determined that Roman was not under a disability from August 1, 2012, through June 20, 2018.

To decide whether a claimant is disabled for the purpose of determining eligibility for either DIB or SSI, an ALJ is required to employ a five-step sequential evaluation process. See 20 C.F.R. §§ 404.1520 (DIB) & 416.920 (SSI).

> The steps are: 1) if the [claimant] is engaged in substantial gainful work activity, the application is denied; 2) if the [claimant] does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the [claimant's] "residual functional

16

capacity" is such that he or she can still perform
past relevant work, then the application is denied; 5)
if the [claimant], given his or her residual
functional capacity, education, work experience, and
age, is unable to do any other work, the application
is granted.

Purdy, 887 F.3d at 10 (quoting Seavey v. Barnhart, 276 F.3d 1, 5

(1st Cir. 2001); citing 20 C.F.R. § 416.920).

At the first four steps in the sequential evaluation

process, the claimant bears both the burden of production and

the burden of proof.  See Purdy, 887 F.3d at 9 (citing Freeman

v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001)); see also Bowen

v. Yuckert, 482 U.S. 137, 146 (1987).  He must prove he is

disabled by a preponderance of the evidence.  See Mandziej v.

Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v.

Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982)).[17]  Finally,

[i]n assessing a disability claim, the [Commissioner]
considers objective and subjective factors, including:
(1) objective medical facts; (2) [claimant]'s
subjective claims of pain and disability as supported
by the testimony of the claimant or other witness; and
(3) the [claimant]'s educational background, age, and
work experience.

Mandziej, 944 F. Supp. at 129 (citing Avery v. Sec'y of HHS, 797

F.2d 19, 23 (1st Cir. 1986); Goodermote v. Sec'y of HHS, 690

F.2d 5, 6 (1st Cir. 1982)).

---

[17] At step five, the burden of proof shifts to the Acting
Commissioner, see Seavey, 276 F.3d at 5 (citing Arocho v. Sec'y
of HHS, 670 F.2d 374, 375 (1st Cir. 1982)), but the Acting
Commissioner's step-five determination is not at issue here, so
there is no need to describe the mechanics of step five.

B.  Roman's Claims

Roman claims that the ALJ erred by: (1) failing to properly evaluate his physical impairments; (2) relying on Dr. Strahl's testimony; and (3) failing to properly evaluate the medical-opinion evidence.  In his second claim, Roman notes that "the ALJ's decision includes no analysis of the [paragraph] C criteria at step 3 or anywhere in the decision."  Cl.'s Mem. of Law (doc. no. 9-1) 16.  That, in turn, points directly to the fatal flaw in the ALJ's decision, which is the manner in which he determined that Roman would not have a listing-level mental impairment if he were to abstain from alcohol and marijuana.

1.  Step Three, Without Substance Use

With regard to the relationship between substance use and disability, the Social Security Act provides that

> [a]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled.

42 U.S.C. § 423(d)(2)(C).  Thus, when a claimant is found to be disabled, as Roman was in this case, see Tr. 24, and there is evidence of alcoholism or drug addiction, as there is in this case, it is necessary to "determine whether [the claimant's] drug addiction or alcoholism ['DAA'] is a contributing factor material to the determination of disability."  20 C.F.R. §§ 404.1535(a) & 416.935(a).  That, in turn, entails a

determination of whether the claimant would still be "disabled if [he] stopped using drugs or alcohol," §§ 404.1535(b) & 416.935(b).

Like the burden of proving disability, the burden of proving that DAA is immaterial rests with the claimant. See Cage v. Comm'r of SSA, 692 F.3d 118, 123 (2d Cir. 2012); Social Security Ruling ("SSR") 13-2p, 2013 WL 621536, at *4 (S.S.A. Feb. 20, 2013). Moreover, the materiality question is for the ALJ, and the ALJ's materiality determination will be affirmed as long as it is supported by substantial evidence. See Benelli v. Comm'r of SSA, No. Civ. No. 14-10785-MBB, 2015 WL 3441992, at *24 (D. Mass. May 28, 2015).

The analysis described in 20 C.F.R. §§ 404.1535 and 416.935 "requires the ALJ to engage in the familiar five-step sequential analysis for a second time, while discounting the effects of the claimant's substance abuse." Silva v. U.S. SSA, Acting Comm'r, No. 17-cv-368-PB, 2018 WL 4043146, at *8 (D.N.H. Aug. 3, 2018) (citing Sax v. Colvin, 31 F. Supp. 3d 1156, 1161 (E.D. Wash. 2014); Lohmeier v. Colvin, No. CV-14-02247-TUC-BPV, 2016 WL 825850, at *8 (D. Ariz. Mar. 3, 2016); SSR 13-2p, 2013 WL 621536, at *4-6).

When engaging in the five-step analysis to evaluate a claim involving mental impairments, either with or without substance use, SSA decisionmakers at all levels must employ the "special

technique" set out in 20 C.F.R. §§ 404.1520a and 416.920a.  At

step three, the special technique requires decisionmakers to

"compare[ ] the medical findings about [the claimant's]

impairment(s) and the rating of the degree of functional

limitation to the criteria of the appropriate listed mental

disorder," §§ 404.1520a(d)(2) & 416.920a(d)(2), and to "record

the presence or absence of the criteria . . . in the decision at

the administrative law judge hearing . . . level[ ]," id.

At the first installment of Roman's second hearing, in June

of 2016, Dr. Strahl offered testimony that when Roman was using

alcohol and/or marijuana, his mental impairments satisfied the

paragraph B criteria of Listings 12.04, 12.06, and 12.08, but

would not satisfy the paragraph B criteria if he were to abstain

from using those substances.  It does not appear that Dr. Strahl

offered any opinions on whether Roman's mental impairments would

satisfy either the paragraph A criteria or the paragraph C

criteria if he were to be abstinent.[18]

---

[18] These are the paragraph C criteria that were in effect at
the time of the ALJ's decision in this case:

   Your mental disorder in this listing category is
   "serious and persistent;" that is, you have a
   medically documented history of the existence of the
   disorder over a period of at least 2 years, and there
   is evidence of both:

   1. Medical treatment, mental health therapy,
   psychosocial support(s), or a highly structured
   setting(s) that is ongoing and that diminishes the

At the second installment of Roman's second hearing, in May
of 2018, Dr. Strahl reaffirmed his previous testimony regarding
the paragraph B criteria.  But, as before, it does not appear
that he said anything about any of the relevant paragraph A
criteria.[19]  He also testified that he "considered" the paragraph
C criteria, but went on to say this: "I don't consider being in
prison to be acceptable to C criteria.  <u>I don't have an opinion
on C criteria</u>."  Tr. 82 (emphasis added).  While Dr. Strahl did
not elaborate on what he meant by saying that he did not
consider being in prison to be "acceptable" to the paragraph C
criteria, it is clear that his consideration of those criteria
did not ripen into an evaluation of whether Roman's impairments
satisfied them.  Rather, it appears that Dr. Strahl only went so
far as to say that Roman's incarceration prevented him from

---

symptoms and signs of your mental disorder (see
12.00G2b); <u>and</u>

2. Marginal adjustment, that is, you have minimal
capacity to adapt to changes in your environment or to
demands that are not already part of your daily life
(see 12.00G2c).

20 C.F.R. Pt. 404, Subpt. P, App.1, Listings 12.04, 12.06, 12.15
(2018 ed).

[19] In his memorandum of law, claimant says that "Dr. Strahl
. . . addressed only the 'A and B' criteria, absent substance
use," doc. no. 9-1, at 15, but several sentences later, he
states that 'Dr. Strahl . . . refused to assess [him] under the
'A and C' criteria," <u>id.</u>  I have been unable to locate any
express discussion of the paragraph A criteria in Dr. Strahl's
testimony.

evaluating Roman's impairments under the paragraph C criteria. Accordingly, as to the paragraph A and C criteria, substantial evidence to support a materiality finding would have to come from somewhere other than Dr. Strahl's testimony.

In his decision, the ALJ determined that with substance use, Roman's mental impairments met Listings 12.04, 12.06, 12.08, and 12.15 because they satisfied the paragraph A and paragraph B criteria for those four listings. Then he determined that without substance use, Roman's mental impairments would not meet any of those four listings. He based that determination on his finding that "the paragraph B criteria would not be satisfied if the claimant stopped [his] substance use," Tr. 26, and his observation that "no State agency psychological consultant concluded that a mental listing is medically equaled if the claimant stopped [his] substance use," id.

The problem with the ALJ's decision is that failing to satisfy the paragraph B criteria, without more, does not prevent a mental impairment from meeting Listing 12.04, Listing 12.06, or Listing 12.15.  Each of those listings can be met by an impairment that satisfies the criteria in paragraphs A and C.

One may reasonably infer from the ALJ's decision a finding that Roman's mental impairments: (1) did not satisfy the paragraph A criteria for Listings 12.04, 12.06, or 12.15; or (2)

did not satisfy the paragraph C criteria shared by all three listings. Coupled with a failure to satisfy the paragraph B criteria, either a failure to satisfy the paragraph A criteria or a failure to satisfy the paragraph C criteria would be a sufficient basis for determining that Roman's mental impairments did not meet Listings 12.04, 12,06, or 12.15. But the ALJ did not "record the presence or absence of the [paragraph A or C] criteria . . . in his decision," as required by 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2), nor did he "compar[e] the medical findings about [Roman's mental] impairments . . . to the [paragraph A or C] criteria of the appropriate listed mental disorders," as is also required by those regulations. Rather, he said nothing at all about whether Roman's mental impairments, in the absence of substance use, would satisfy the paragraph A or the paragraph C criteria of Listings 12.04, 12.06, or 12.15. The Acting Commissioner does not argue to the contrary. By failing to follow §§ 404.1520a(d)(2) and 416.920a(d)(2), the ALJ erred.

In a recent decision from the District of Massachusetts, Magistrate Judge Robertson pointed out that "[a]lthough the First Circuit has not decided the consequences of noncompliance with the special technique outlined in 20 C.F.R. § 404.1520a, district courts in this circuit and other circuits have required remand in circumstances similar to those presented here."

Armata v. Berryhill, No. 3:17-cv-30054-KAR, 2018 WL 4829180, at

*14 (D. Mass. Oct. 4, 2018).  The circumstances presented in

Armata were these: "[T]he ALJ failed to specifically assess the

Paragraph B criteria at step three and omitted his ratings in

the written decision."  Id.  I am persuaded by the reasoning of

Armata, and the cases cited therein, that remand is required

here, too.  As the Fourth Circuit has explained:

> [T]he weight of authority suggests that failure to
> properly document application of the special technique
> will rarely, if ever, be harmless because such a
> failure prevents, or at least substantially hinders,
> judicial review.  See, e.g., Kohler v. Astrue, 546
> F.3d 260, 267 (2d Cir. 2008); see also Mascio v.
> Colvin, 780 F.3d 632, 636-37 (4th Cir. 2015) (finding
> reversible error where ALJ failed to employ a parallel
> special-technique regulation for assessing
> supplemental security income benefits claims).
> Without documentation of the special technique, it is
> difficult to discern how the ALJ treated relevant and
> conflicting evidence.  See Mascio, 780 F.3d at 637
> (refusing to hold that ALJ's lack of reasoning
> constituted harmless error "[b]ecause we are left to
> guess about how the ALJ arrived at his conclusions"
> regarding an RFC assessment); Myers v. Califano, 611
> F.2d 980, 983 (4th Cir. 1980).
>
> "Administrative determinations are required to be
> made in accordance with certain procedures which
> facilitate judicial review."  Cook v. Heckler, 783
> F.2d 1168, 1172 (4th Cir. 1986).  We cannot fill in
> the blanks for the ALJ in the first instance.  Failure
> to document application of the special-technique
> regulation constitutes error.

Patterson v. Comm'r of SSA, 846 F.3d 656, 662 (4th Cir. 2017).

While Armata, Patterson, and many of the cases cited in Armata

involved the paragraph B criteria rather than the paragraph A

and C criteria that the ALJ in this case failed to address, I can see no reason why the principles on which those decisions rest do not apply with equal force in this case. Those principles, in turn, counsel in favor of remand.

That said, I acknowledge that some courts, under some circumstances, have ruled that a failure to make the findings required by 20 C.F.R. §§ 404.1520a(e) and 416.920a(e) can be a harmless error. For example, the Sixth Circuit once held that an "ALJ's failure to rate the [paragraph] B criteria, while error, was harmless in this case." Rabbers v. Comm'r of SSA, 582 F.3d 647, 661 (6th Cir. 2009). The Rabbers court reached that conclusion after examining the record and determining that "even had the ALJ made specific findings regarding the B criteria, he would have reached the same conclusion at step three: that Rabbers's bipolar disorder was not sufficiently severe to meet the criteria of any listed impairment." Id. at 658. However, the circumstances of Rabbers are not sufficiently similar to the circumstances of this case to persuade me that a harmless-error analysis is the appropriate response to the failure of the ALJ in this case to address the criteria listed in paragraphs A and C.

To begin, in Rabbers, it was clear that while the ALJ did not rate the paragraph B criteria, he found that the claimant's impairment(s) did not meet a listing because they did not

satisfy the paragraph B criteria.  That left the court the simple task of doing the one thing the ALJ did not do, comparing the evidence in the record to the four paragraph B criteria. This case is different.

Here, after comparing the evidence of record to the paragraph B criteria, the ALJ found that none of Roman's mental impairments met Listings 12.04, 12.06, 12.08, or 12.15.  But an impairment will meet Listings 12.04, 12.06, or 12.15 if it satisfies either the criteria in paragraphs A and B or the criteria in paragraphs A and C.  Thus, to find that Roman's mental impairments did not meet those listings, the ALJ had to have found that they did not satisfy either the paragraph A criteria or the paragraph C criteria.  But in addition to not comparing the record evidence to the paragraph A or the paragraph C criteria, the ALJ did not even say which set of criteria Roman's impairment failed to satisfy.  As a result, a harmless error analysis in this case would not involve comparing the record evidence to one set of criteria, as the Rabbers court did.  Rather, in contrast with the situation in Rabbers, the ALJ's failure to follow 20 C.F.R. §§ 404.1520a and 416.920a in this case "substantially hinders judicial review," Patterson, 846 F.3d at 662, by requiring me to: (1) "guess about how the ALJ arrived at his conclusions," id. (citation omitted); or (2) "fill in the blanks for the ALJ in the first instance," id.

Neither alternative is acceptable and, as a consequence, this case is not amenable to harmless-error analysis of the kind the Sixth Circuit undertook in Rabbers.

In sum, this matter must be remanded for a proper and properly documented application of the special technique at step three of the sequential evaluation process.[20]

### 2. Other Issues

While this matter must be remanded for a proper determination of whether any of Roman's mental impairments, absent substance use, meet or equal the severity of a listed impairment, there is another matter that the Acting Commissioner may be well advised to consider on remand, i.e., the manner in which the ALJ dealt with Roman's back impairment.

The ALJ determined, at step 2 in the sequential evaluation process, that Roman's diagnosed low back pain with radiculopathy was not a severe impairment. Because step 2 is a low threshold to cross, see McDonald v. Sec'y of HHS, 795 F.2d 1118, 1124 (1st Cir. 1986), and given that Roman has been prescribed several opioid medications for his back pain, the ALJ's step 2 finding

_____

[20] But on remand, it will be necessary to consider only Listings 12.04, 12.06, and 12.15. Because Listing 12.08 is met only by an impairment that satisfies the criteria in paragraphs A and B, the ALJ's determination that Roman's mental impairments do not satisfy the paragraph B criteria is sufficient to support a determination that his personality/impulse-control disorder does not meet or equal Listing 12.08.

is difficult to understand.  However, "[e]rrors at Step Two are harmless as long as the ALJ found at least one severe impairment, continued on with the sequential analysis, and considered the effect of all impairments [both severe and non-severe] on the claimant's functional capacity."  Riel v. Berryhill, No. 18-cv-278-LM, 2019 WL 636883, at *6 (D.N.H. Jan. 25, 2019), R. & R. approved by 2019 WL 635408 (Feb. 13, 2019) (citations omitted).  The problem here lies in the way the ALJ considered Roman's back impairment when formulating his physical RFC.

As I have noted, the ALJ determined that Roman had the physical RFC to perform work at all exertional levels.  He explained that finding this way:

> With regard to physical limitation[s], the undersigned notes that no medical provider or examiner has opined any functional limitation[s] attributable to any or all of the claimant's non-severe physical condition[s].  Accordingly, the undersigned assigns no exertional limitation[s], and the claimant retains the physical functional capacity to perform work at all exertional levels.

Tr. 33.  Thereafter, the ALJ denied Roman's request for a consultative examination on grounds that "[t]here [was] no need to further develop the record [because] the evidence already in evidence [was] adequate for [him] to make a determination as to eligibility."  Id.

However, the evidence before the ALJ included no expert opinion regarding Roman's physical RFC, which makes this case an analog to Dowell v. Colvin, in which the question before the court was

> whether the admitted lack of opinions concerning work-related limitations caused by the plaintiff's degenerative disc disease in the record may be laid at the door of the plaintiff, for failing to provide such evidence at a point in the proceedings where he had the burden of proof, or may entitle him to remand, based on the administrative law judge's failure to seek out such opinions or refer the plaintiff for a consultative examination.

No. 2:13-cv-246-JDL, 2014 WL 3784237, at *4 (D. Me. July 31, 2014) (footnote omitted). After pointing out that "[a]n administrative law judge may properly reject a claim for benefits for lack of evidence," id. (citing Bout v. Comm'r of SSA, No. 1:09cv45, 2010 WL 565252, at *6 (W.D. Mich. Feb. 11, 2010)), the judge in Dowell explained that the ALJ in that case did not reject the claim before him for lack of evidence, see id., and then remanded because, absent any expert opinion, "there [was] no evidence in the record upon which the physical limitations assigned to the [claimant]'s residual functional capacity by the administrative law judge can rest," id. So too, here. Rather than saying that he could not do so because of a lack of evidence, the ALJ assessed Roman's physical RFC and determined, without the support of any expert medical opinion, that Roman had the physical RFC to perform a full range of work

at all exertional levels. In light of <u>Dowell</u>, the Acting Commissioner may wish to reconsider the ALJ's denial of claimant's request for a consultative physical examination.

## IV. Conclusion

For the reasons detailed above, the Acting Commissioner's motion for an order affirming her decision, document no. 13, is denied, and Roman's motion to reverse that decision, document no. 9, is granted to the extent that this matter is remanded to the Acting Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings consistent with this order. The clerk of the court shall enter judgment in favor of Roman and close the case.

**SO ORDERED.**

/s/ Paul J. Barbadoro
Paul J. Barbadoro
United States District Judge

July 19, 2019

cc:  Counsel of record